LONG, Appellee,

v.

NOAH'S LOST ARK, INC. et al., Appellants.

[Cite as *Long v. Noah's Lost Ark, Inc.,* 158 Ohio App.3d 206, 2004-Ohio-4155.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 04–MA–88.

Decided Aug. 6, 2004.

208

Holland & Muirden and J. Jeffrey Holland, for appellee.

Goldberg & O'Shea and Michael J. O'Shea, for appellants.

---

GENE DONOFRIO, Judge.

{¶ 1} Defendants-appellants, Noah's Lost Ark, Inc. and Douglas and Ellen Whitehouse, appeal from a Mahoning County Common Pleas Court decision granting summary judgment in favor of plaintiff-appellee, William Long.

{¶ 2} At the heart of this dispute is a ten-month-old lion cub named "Boomerang." The Whitehouses are the operators of Noah's Lost Ark ("Noah's"), a nonprofit exotic animal shelter located in Berlin Center, Ohio. Appellee is an animal-rights activist from Upper Arlington, Ohio, who became involved with Alfred Guart, a reporter for the New York Post (the "Post").

{¶ 3} Guart decided to investigate the private ownership of exotic animals as pets after incidents involving Ming the tiger in New York City and magician Roy Horn's mauling. As part of his investigation, Guart decided to attempt to purchase a lion cub in Ohio. He solicited appellee's help in this endeavor. Appellee accompanied Guart and his photographer to the "Backyard Safari" in Wapakoneta, Ohio. There, they purchased an eight-day-old African lion cub for $1,000 from Jeffrey Burton, a federally licensed exotic animal breeder, seller, and exhibitioner. The USDA acquisition form listed appellee as the buyer.

{¶ 4} The men took the lion cub to Guart's hotel in Columbus. Once there, appellee left the cub in Guart's care. The men agreed that Guart would take the cub to the Shambala Preserve ("Shambala") in California, owned by Tippi Hedren, but would first take the cub to Noah's due to its young age before travel to California. According to Mrs. Whitehouse, Guart showed up with the cub and abandoned it in appellants' care. Guart left the cub at Noah's on October 12, 2003. According to Guart, when he brought the cub to Noah's, it was not in any distress. According to Mrs. Whitehouse, she refused to let Guart leave with the cub because she believed the cub was too ill to travel. The sheriff was called. Guart stated that he was under the impression that if he left with the cub, the sheriff would arrest him.

{¶ 5} A few days later, appellee left a telephone message for Mrs. Whitehouse requesting the return of the cub. He then wrote a letter to Mrs. Whitehouse on October 16, 2003, again requesting the cub's return. Appellee received no response to his call or letter, so he engaged legal counsel, who requested the cub's return by letter dated October 28, 2003. Mrs. Whitehouse advised appellee's attorney she would not return the cub. She believed that the cub could have died if she turned it over because she thought appellee did not know how to care for it.

{¶ 6} Appellee filed a complaint against appellants on November 8, 2003. In the complaint, appellee alleged the following. On October 12, 2003, his representative entered into an oral agreement with appellants that appellants would keep the lion cub at their shelter temporarily with the understanding that appellee intended to retrieve the cub and transport it to its permanent home at an exotic animal sanctuary in California. Appellants desired to care for the cub to further Noah's nonprofit purposes. Noah's received significant publicity and donations as a direct result of caring for the cub. Appellee was at all times willing and able

to pay all costs associated with boarding and caring for the cub. Appellee demanded return of the cub, but appellants refused.

{¶ 7} Based on these alleged facts, appellee asserted claims for breach of contract, conversion, replevin, fraud, and intentional misrepresentation. He asked the court for compensatory damages from the loss of use of his property and from money he expended arranging for the care and transportation of the cub, which was wasted because of appellants' refusal to relinquish the cub's custody; punitive damages; attorney fees and costs; and preliminary and permanent injunctions requiring appellants to return the cub to him. Appellee also filed a motion for order of possession, requesting that the court grant him immediate pretrial possession of the cub.

{¶ 8} Appellants filed an answer and counterclaim on December 8, 2003. In their counterclaim, appellants alleged the following. Before they took possession of the lion cub, the Post and Guart decided to acquire a wild animal for a promotional stunt. Guart and the Post contacted appellants and requested their assistance in the publicity stunt. Appellants refused. Guart then recruited appellee to help with the acquisition of an animal. On October 12, 2003, Guart and the Post gave appellee money to purchase the cub in Ohio, which they planned to take back to New York. Appellee purchased the lion cub, which was taken from its mother at just over a week old. Because of the cub's young age, it became sick. Appellee then gave the cub to Guart and a photographer, who took the cub to Noah's, where they left him. Appellants had to enlist the immediate services of a veterinarian to save the cub's life. Approximately a week later, appellee wrote appellants a letter demanding the return of the cub. Appellants refused to return the cub, which they now believed to be their property. Based on these alleged facts, appellants asserted claims for abuse of process and, in the event that appellee obtained the cub's ownership rights, for restitution.

{¶ 9} A magistrate held a hearing on December 11, 2003, on appellee's motion for a preliminary injunction, at which appellee testified and presented testimony from other witnesses, including Mrs. Whitehouse, Guart, and Tippi Hedren. At the close of appellee's evidence, appellants moved the court to deny the motion for preliminary injunction, suggesting that appellee had not proven the necessary elements. The magistrate agreed and denied the preliminary injunction.

{¶ 10} Next, appellee filed a motion for summary judgment on appellants' counterclaim and on his own conversion claim on January 8, 2004. In a February 6, 2004 decision, the magistrate overruled appellee's summary judgment motion as to his conversion claim and request for an immediate order of possession of the lion cub. The magistrate concluded that while appellee might have proven the elements of conversion, a conversion claim is an action for money damages only.

The magistrate granted appellee summary judgment on appellants' counterclaim for abuse of process.

{¶ 11} Appellee next filed a motion for summary judgment on his replevin claim. In a March 24, 2004 decision, the magistrate granted summary judgment to appellee on his replevin claim and granted permanent possession of the lion cub to appellee. Appellants subsequently filed objections to the magistrate's decision.

{¶ 12} The trial court ruled on the objections in its May 7, 2004 judgment entry. The court concluded that no genuine issue of material fact existed and therefore granted appellee summary judgment on his claims for replevin and conversion and on appellants' claim for abuse of process. The court ordered appellants to deliver possession of the lion cub to appellee.

{¶ 13} Appellants filed a timely notice of appeal on May 10, 2004. They also filed a motion for an emergency stay of execution, which this court granted on May 13, 2004. Additionally, this court held that the remaining claims for damages are incidental to the fundamental claim for a determination of the right to possession of the cub, and thus the trial court's judgment is final and appealable.

{¶ 14} Initially, appellee argues that appellants have not preserved their appellate rights because they failed to state specific objections to the magistrate's March 25 decision. Civ.R. 53(E)(3)(b) requires that objections to a magistrate's decision be specific and state with particularity the grounds of objection. "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Civ.R. 53(E)(3)(d). Courts have held that general objections do not meet Civ.R. 53(E)(3)'s standard. See *Thrower v. Akron*, 9th Dist. No. 21518, 2003-Ohio-5361, 2003 WL 22298380; *Rush v. Schlagetter* (Apr. 15, 1997), 4th Dist. No. 96CA2215, 1997 WL 193169.

{¶ 15} Appellants filed objections to the magistrate's decision, stating only that they objected to the decision and incorporated by reference the contents of their brief in opposition to summary judgment. Their brief in opposition to summary judgment presented the trial court with the same arguments that appellants had presented to the magistrate and that they now raise on appeal. Appellee alleges that this did not adequately preserve the issue for appeal.

{¶ 16} Summary judgment involves accepting the facts alleged by the nonmoving party and determining whether a genuine issue of material fact exists. If none exists, the court rules as a matter of law. Since appellants incorporated by reference their brief in opposition to summary judgment, they specifically took

issue with the magistrate's finding that no genuine issue of material fact exists to preclude judgment for appellee.

{¶ 17} Furthermore, an examination of the standards of review helps to resolve this issue. When reviewing a trial court's decision to adopt, reject, or modify a magistrate's decision, appellate courts examine the case for abuse of discretion. *Wade v. Wade* (1996), 113 Ohio App.3d 414, 419, 680 N.E.2d 1305. However, when reviewing a trial court's decision to grant summary judgment, appellate courts review the case de novo. *Cole v. Am. Indus. & Resources Corp.* (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179. This court has previously reviewed cases de novo when magistrates have determined that summary judgment was appropriate and the trial court adopted the magistrates' decisions awarding summary judgment. See *Zeppernick v. PNC Bank Natl. Assn.* (Aug. 22, 2000), 7th Dist. No. 99–CA–7, 2000 WL 1262459; *Logangate Homes, Inc. v. Dollar Sav. & Trust* (June 8, 1999), 7th Dist. No. 96–CA–250, 1999 WL 397914; *Credit Reporting Serv., Inc. v. Joseph Sylvester Constr. Co., Inc.* (Aug. 24, 1999), 7th Dist. No. 98–CA–30, 1999 WL 669514.

{¶ 18} No trial court should be able to circumvent this court's de novo review of summary judgment rulings. A trial court could attempt to do so by referring a summary judgment issue to a magistrate and then ruling on the parties' objections to the magistrate's decision. Subsequently, the winning party would argue that this court should review the trial court's decision for abuse of discretion. This would be inherently unfair to the party against whom summary judgment is granted. When a court determines that no genuine issue of material fact exists and grants judgment to a party, the other party is entitled to a de novo review by this court.

{¶ 19} Because we will not review the grant of summary judgment for abuse of discretion and because we find appellants' objections to be sufficiently particular, we conclude that appellants have not forfeited their appellate rights. Thus, we will consider appellants' alleged errors.

{¶ 20} Appellants raise three assignments of error, the first of which states:

{¶ 21} "The trial court erred by granting summary judgment given the existence of material fact issues."

{¶ 22} Appellants argue that even if appellee established that he owned the cub at one time, a genuine issue of material fact remains as to whether he abandoned the cub. They assert that once someone abandons property, the person cannot later change his or her mind and recover the property from the now rightful owner.

{¶ 23} Appellants claim that the preliminary injunction hearing testimony demonstrated that appellee was never intended to be the cub's owner. They assert that Guart used appellee as a strawman because appellee had an Ohio driver's license (which may have been required to purchase the cub in Ohio), while Guart did not. They claim that appellee abandoned any claim to the cub when he left the cub in Guart's care at the Columbus hotel.

{¶ 24} Additionally, appellants assert that the preliminary injunction hearing testimony and the affidavits demonstrated a question of fact as to whether Guart and his accomplices abandoned the cub at Noah's Lost Ark.

■ {¶ 25} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. *Cole*, 128 Ohio App.3d at 552, 715 N.E.2d 1179. Thus, we will apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) requires that the trial court render summary judgment if no genuine issue of material fact exists and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. Whether a fact is material depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.* (1995), 104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

■ {¶ 26} Preliminarily, we must address appellants' contention that the trial court should not have considered the transcripts from the December 11 magistrate's preliminary injunction hearing. For support, appellants cite *DeSalvo v. Sukalski* (1983), 8 Ohio App.3d 337, 8 OBR 448, 457 N.E.2d 349, superseded by statute on other grounds. In *DeSalvo*, the court simply stated that "[i]n-court testimony as a basis for rendering a summary judgment is not permitted under [Civ.R. 56]." Id. at 338, 8 OBR 448, 457 N.E.2d 349. It made this statement after noting that the trial court's judgment stated, "On hearing the evidence, the court found there to be no genuine issue of fact." Id. Thus, in *DeSalvo*, the trial court actually heard testimony on the summary judgment motion. That is not the case here. In this matter, the court considered transcripts of evidence from the preliminary injunction hearing. Civ.R. 56(C) specifically lists the types of evidence the court may consider in ruling on a summary judgment motion to include "pleadings, depositions, answers to interrogatories, written admissions, affidavits, *transcripts of evidence,* and written stipulations of fact." (Emphasis added.) Thus, the trial court properly considered the transcripts from the preliminary injunction hearing.

{¶ 27} Three issues need be determined here: (1) Is there a genuine issue of material fact as to whether appellee ever owned the cub? (2) Is there a genuine issue of material fact as to whether appellee abandoned the cub when he left it in Guart's care? and (3) Is there a genuine issue of material fact surrounding whether Guart abandoned the cub when he left it at Noah's? These questions will be addressed in order.

{¶ 28} There is no genuine issue of fact that appellee is the cub's owner of record. Appellants argue that since appellee never intended to keep the cub and since appellee, Guart, and the photographer all contributed to the purchase price, a question of fact is created as to whether appellee ever owned the cub. However, the evidence is clear that appellee is the cub's owner. Appellee testified that when it came time to buy the cub, the men had to decide who would be the purchaser. Appellee stated that he volunteered to be the purchaser. He further testified that he signed the purchase agreement for the cub and that he never signed over ownership to Guart. And Guart also testified that appellee was the cub's purchaser and owner.

{¶ 29} The purchase documents support appellee's testimony. Appellee signed a USDA Record of Acquisition, Disposition or Transport of Animals for the sale of the cub. The form lists Burton as the seller and appellee as the buyer of an eight-day-old African lion. Additionally, appellee signed a receipt issued by Burton to appellee documenting the sale of an eight-day-old male lion cub for $1,000. The receipt states: "This cub has not been started on the bottle and buyer assumes all responsibility as to health and care requirements. I understand this is a potentially dangerous animal and agree to assume all responsibility associated with this purchase." And even Mrs. Whitehouse testified that Guart showed her the papers demonstrating that appellee owned the cub. Thus, it is plain that appellee owned the cub. Whether appellee intended to own the cub for a long period of time is irrelevant. What is paramount is that appellee purchased the cub and became its legal owner.

{¶ 30} A replevin action is a possessory action on behalf of one entitled to possession against one having, at the time the suit begins, possession and control of the property. *Tewarson v. Simon* (2001), 141 Ohio App.3d 103, 117, 750 N.E.2d 176. It is based on an unlawful detention, regardless of whether an unlawful taking has occurred. Id. Since appellee is the cub's owner of record and appellants are in possession of the cub, appellee was entitled to summary judgment on his replevin claim and possession of the cub unless appellants raised a genuine issue of material fact as to whether appellee had abandoned the cub.

{¶ 31} In *Davis v. Suggs* (1983), 10 Ohio App.3d 50, 52, 10 OBR 59, 460 N.E.2d 665, the court explained abandonment:

{¶ 32} " 'Abandonment' has been described as an:

{¶ 33} " '* * * absolute unequivocal relinquishment of a right or status without regard to self or any other person. It is a virtual throwing away without regard as to who may take over or carry on. It is a total discarding of what existed or went before; and evidence thereof must be direct, affirmative or reasonably beget the exclusive inference of throwing away.' *State, ex rel. Reeder, v. Municipal Civil Service Comm.* (C.P.1958), 82 Ohio Law Abs. 225, 237, 165 N.E.2d 490, affirmed (1959), 166 N.E.2d 264.

{¶ 34} "* * *

{¶ 35} "Abandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent. Mere non-use is not sufficient to establish the fact of abandonment, absent other evidence tending to prove the intent to abandon. *Kiser v. Board of Commrs.* (1911), 85 Ohio St. 129, 97 N.E. 52; see 1 Corpus Juris Secundum (1936) 10, Abandonment, Section 3b(2)."

{¶ 36} As stated above, we must determine whether a genuine issue of material fact exists as to whether appellee abandoned the cub when he left it in Guart's care. We conclude that it does not.

{¶ 37} Appellee testified that he agreed to help Guart acquire an exotic cat for his story. He stated that he planned all along that the animal they purchased would go to Shambala. After he purchased the cub, appellee testified that they purchased food for it and drove back to Guart's hotel. After they arrived at the hotel, appellee stayed approximately 20 minutes and took the cub outside to walk in the grass. He then left. Appellee testified that it was his plan that Guart would take the cub to Noah's the next day. He stated that he wanted Noah's to house the cub temporarily because it was so young and he did not think it was ready for travel to California. Appellee stated that he had been to Noah's previously and thought it was an appropriate place to temporarily care for the cub. Finally, appellee testified that he never gave ownership of the cub to anybody, including Guart.

{¶ 38} Additionally, Guart testified that appellee was the purchaser and owner of the cub. He stated that they had decided that appellee would buy the cub because they thought it best that someone with an Ohio driver's license purchase the cub. Furthermore, he stated that appellee never gave him ownership of the cub. Finally, he testified that appellee gave him consent to take the cub to Noah's.

{¶ 39} No other evidence exists to raise an issue of fact as to whether appellee abandoned the cub when he left it in Guart's care. Abandonment "is a

virtual throwing away without regard as to who may take over or carry on." *Davis,* 10 Ohio App.3d at 52, 10 OBR 59, 460 N.E.2d 665, quoting *Reeder,* 82 Ohio Law Abs. at 237, 165 N.E.2d 490. No evidence suggests that appellee left the cub "without regard as to who may take over or carry on." Appellee stated that he entrusted Guart to take the cub to Noah's for temporary housing and care. Guart testified that he had appellee's consent to take the cub to Noah's. And both men testified that ownership never transferred between them. Furthermore, appellee stated that he planned for the cub to ultimately go to Shambala. This is not the intent of someone who has no regard as to who would care for the cub. Thus, no genuine issue of material fact exists here.

{¶ 40} When appellee left the cub in Guart's care, he created a bailment.

{¶ 41} "A bailment exists where one person delivers personal property to another to be held for a specific purpose with a contract, express or implied, that the property shall be returned or accounted for when the special purpose is accomplished or retained until the bailor reclaims the property. Bailment involves the transfer of a possessory interest only and not an ownership interest in the property. A bailment may be for the benefit of only the bailor or bailee, or for the mutual benefit of both." (Citations omitted.) *Wanko v. Downie Productions, Inc.* (Aug. 24, 2000), 10th Dist. No. 99AP–1047, 2000 WL 1199235.

{¶ 42} Appellee left the cub in Guart's possession for Guart to take the cub to Noah's for a limited time. Guart became a bailee of the cub. He had a possessory interest in the cub, but did not own the cub. This is important as we examine the final question of whether Guart abandoned the cub when he left it at Noah's.

{¶ 43} It has been held as far back as 1831 that "no one can transfer a greater right or better title than he himself possesses." *Roland v. Gundy* (1831), 5 Ohio 202, 204, 1831 WL 67; see, also, *Hamet v. Letcher* (1881), 37 Ohio St. 356, 359, 1881 WL 108; *Cooperider v. Myre* (1930), 37 Ohio App. 502, 506, 175 N.E. 235. In this case, Guart never owned the cub. Thus, it follows that he could not transfer title of the cub to Noah's, even if he abandoned it. The best property right Guart could abandon was possession, not ownership of the cub. "The mere fact of one putting property into the charge or custody of another does not divest the possession of the true owner; the legal possession still remains in the owner, for the agent, bailee, or lessee thereof can have no greater title than his grant provides." *Cooperider,* 37 Ohio App. at 506–507, 175 N.E. 235. Therefore, it is irrelevant whether Guart abandoned the cub, because he could not transfer ownership of the cub in the first place.

{¶ 44} Furthermore, even if Guart could have transferred ownership of the cub by abandonment, appellants have failed to point to a genuine issue of material fact to demonstrate that Guart intended to abandon the cub.

{¶ 45} Guart testified that Mrs. Whitehouse asked for proof of ownership and he showed her the forms listing appellee as the cub's owner. Mrs. Whitehouse also testified that Guart showed her the papers demonstrating that appellee was the cub's owner. Thus, Mrs. Whitehouse knew that Guart did not own the cub.

{¶ 46} Furthermore, when asked what evidence created a genuine issue of material fact as to Guart's intent to abandon the cub, appellants referred this court to their affidavits. These affidavits (attached to appellants' brief in opposition to appellee's motion for summary judgment as to appellee's conversion claim and incorporated by reference in appellants' brief in opposition to appellee's motion for summary judgment as to appellee's replevin claim) do not raise a genuine issue of material fact. They contain legal conclusions.

{¶ 47} Civ.R. 53(E) provides that affidavits opposing a summary judgment motion must set forth specific facts to show that there is a genuine issue for trial. "Affidavits which merely set forth legal conclusions or opinions without stating supporting facts are insufficient to meet the requirements of Civ.R. 56(E)." *Stamper v. Middletown Hosp. Assn.* (1989), 65 Ohio App.3d 65, 69, 582 N.E.2d 1040.

{¶ 48} The affidavits of Mr. and Mrs. Whitehouse and John Bates, all of whom were present when Guart brought the cub to Noah's, state: "It was my impression that Guart abandoned the lion cub and would not return to Noah's Lost Ark, as Guart never mentioned anyone calling back or returning to Noah's Lost Ark." Whether Guart abandoned the cub is a legal conclusion, not a fact. The only other facts in the affidavits concerning Guart's intent were that he became nervous when the sheriff arrived and that he and his photographer jumped into a car and told Mr. and Mrs. Whitehouse that they were headed back to New York. These facts do not demonstrate that Guart intended to abandon the cub. As stated previously, abandonment is " 'a total discarding of what existed or went before; and evidence thereof must be direct, affirmative or reasonably beget the exclusive inference of throwing away.' " *Davis,* 10 Ohio App.3d at 52, 10 OBR 59, 460 N.E.2d 665, quoting *State ex rel. Reeder,* 82 Ohio Law Abs. at 237, 165 N.E.2d 490. No evidence suggests that Guart totally disregarded what existed before. Guart stated, and Mrs. Whitehouse admitted, that he informed Mrs. Whitehouse of appellee's ownership of the cub. Furthermore, no evidence suggests that Guart's intent was to "throw away" the cub.

{¶ 49} Guart stated that upon his arrival with the cub, Mrs. Whitehouse thought the cub was very ill. He testified that Mrs. Whitehouse took the cub inside and told him that the cub had a fever. Next, Guart testified that he

eventually changed his mind and told Mrs. Whitehouse that he wanted to take the cub back to Columbus. Guart stated that when he told Mrs. Whitehouse he wanted to take the cub back to Columbus, she called the sheriff. When the sheriff arrived, appellee testified that Mrs. Whitehouse showed him a regulation disallowing the transporting of dogs and cats under eight weeks old. Guart stated that he was under the impression that if he took the cub, the sheriff would arrest him. Finally, he stated that he agreed to leave the cub with Mrs. Whitehouse so that he could avoid being arrested and missing his plane back to New York City.

{¶ 50} Mrs. Whitehouse testified that Guart and his photographer showed up at Noah's with the cub. She stated that the photographer handed her the cub wrapped in towels. She testified that the cub was cold and so she told the men to come inside where it was warm. Mrs. Whitehouse stated that the cub was not moving much and realized she needed to call her vet.

{¶ 51} Mrs. Whitehouse testified that Guart never said that the cub was his and did not say that he was giving her ownership of the cub. She testified that Guart stated that the cub could not die in his care and that they then handed her the cub and said, "Here." When asked what Guart did to indicate to her that she was getting ownership of the cub, Mrs. Whitehouse stated that they handed her the cub and said, "Here, take him." She additionally testified that she refused to let Guart take the cub to another veterinarian because the cub was too sick to go anywhere. She stated that she refused to allow him to leave with the cub even though he asked to do so. And she testified that she showed Guart a regulation providing that cats cannot be shipped under eight weeks of age. Additionally, Mrs. Whitehouse also testified that appellee called and left her a message about picking up the cub approximately four days later. Appellee stated that he called Mrs. Whitehouse approximately two days later and left a message stating that he wanted to make arrangements to pick up the cub. Mrs. Whitehouse stated that she did not return appellee's call because she wanted to keep the cub, since appellee did not know how to care for it.

{¶ 52} Accepting both Guart's and Mrs. Whitehouse's testimony as true, no genuine issue of material fact exists to preclude summary judgment. Guart did not own the cub; thus he could not transfer ownership to Mrs. Whitehouse. Mrs. Whitehouse admitted that Guart demonstrated that appellee owned the cub when he showed her the purchase forms. And Mrs. Whitehouse admitted that she did not want to give the cub back because she was afraid that appellee did not know how to care for it, not because she thought she owned it.

{¶ 53} Given the evidence, the trial court properly granted summary judgment to appellee. Hence, appellants' first assignment of error is without merit.

{¶ 54} Appellants' second assignment of error states:

{¶ 55} "Appellee Long is barred by statutory procedure from obtaining a replevin order."

{¶ 56} Appellants claim that even if no factual dispute exists concerning who purchased the cub and whether the cub was abandoned, appellee, at the time of the summary judgment motion, was statutorily and procedurally barred from recovering the cub in replevin. They assert that replevin is solely a prejudgment remedy and when the defendant has retained possession and posted bond before entry of final judgment, the action converts from an action in replevin to an action in conversion. Thus, they assert, only damages may be recovered, not the property itself, citing *Am. Rents v. Crawley* (1991), 77 Ohio App.3d 801, 603 N.E.2d 1079, and R.C. 2737.14. Furthermore, they allege that appellee conceded that because the trial court denied the prejudgment request for return of the cub, the replevin action turned into a conversion action. Since the trial court ruled on the replevin action, appellants argue that summary judgment was improper, as the court should have considered only money damages.

{¶ 57} Appellee contends that even if the magistrate did not issue a prejudgment order of possession, he was entitled to possession of the cub pursuant to R.C. 2737.14 and *Anca v. Anca* (May 3, 1996), 2d Dist. No. 95–CA–33, 1996 WL 220891. R.C. 2737.14 provides:

{¶ 58} "In an action to recover possession of personal property in which an order of possession has been issued, the final judgment shall award permanent possession of the property and any damages to the party obtaining the award to the extent the damages proximately resulted from the taking, withholding, or detention of the property by the other, and the costs of the action. If delivery of the property cannot be made, the action may proceed as a claim for conversion upon due notice being given the respondent of the date, time, place, and purpose of the hearing upon such claim."

{¶ 59} In *Anca*, the defendant, relying on *Crawley*, argued that the trial court could not award permanent possession of the property to the plaintiff in a replevin action unless there had been a prejudgment possession order. The Second District Court of Appeals relied on R.C. 2737.14 and held that since there was no evidence that delivery of the converted personal property could not be made, the trial court properly entered an order granting permanent possession of the property to the plaintiffs. Given the Second District's holding and R.C. 2737.14, appellee argues that where an order of possession has not been issued but delivery of the property can be made, the action continues as one in replevin for return of the property.

{¶ 60} We find this argument persuasive. As set out above, R.C. 2737.14 provides what happens in two situations. In the first situation, an action to

recover possession of personal property in which an order of possession has been issued, the final judgment should award permanent possession of the property to the party obtaining possession. This situation did not occur in this case because the magistrate did not order a prejudgment order of possession, although he did later state that appellee was entitled to such an order. In the second situation, if delivery of the property cannot be made, the action may proceed as a claim for conversion. This situation does not apply here either, because delivery of the cub to appellee can be made. The question we are faced with is whether it is permissible for the trial court to issue final judgment awarding possession to the party not in possession at the time the judgment is granted in an action to recover possession of personal property when no prejudgment order of possession has been issued, but delivery of the property can be made. This is permissible according to *Anca* and R.C. 2737.14, especially given the fact that in this case the magistrate later stated that appellee was entitled to a prejudgment order of possession.

{¶ 61} This result is fair and equitable. If we were to hold otherwise, a person could take someone else's property, post a bond, and keep the property. That result would be inherently unfair to the rightful owner, especially in cases involving one-of-a-kind property or property with sentimental value.

{¶ 62} Thus, appellants' second assignment of error is without merit.

{¶ 63} Appellants' third assignment of error states:

{¶ 64} "Appellee Long is barred from ownership due to his fraud and illegality."

{¶ 65} Appellants argue that even if we find no merit in their first two assignments of error, appellee is still barred from owning the lion cub due to his fraud and the illegality of the situation. They assert that we cannot enforce the illegal contract between appellee and Jeff Burton, the cub's seller, because it violated Section 1001, Title 18, U.S.Code. Appellants assert that the evidence demonstrated that Burton has a federal USDA license and that the sale of exotic animals is federally regulated. Furthermore, they allege, appellee's actions, along with Guart's and his accomplices' actions in their dealing with Burton, constituted fraud and illegal acts. Therefore, appellants conclude, this court cannot enforce the alleged property rights, since they were created by illegal conduct.

{¶ 66} Section 1001, Title 18, U.S.Code provides:

{¶ 67} "(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of United States, knowingly and willfully—

{¶ 68} "(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

{¶ 69} "(2) makes any materially false, fictitious, or fraudulent statement or representation; or

{¶ 70} "(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

{¶ 71} "shall be fined under this title or imprisoned not more than 5 years, or both."

{¶ 72} Appellant alleges that because of this statute, the trial court could not enforce appellee's property rights, since he bought the cub under false pretenses. Appellee did admit that he went along with Guart's lie to Burton, telling Burton that appellee had property in Delaware County to house the cub and that he had experience with exotic cats. However, this lie did not violate the federal statute. On the official USDA form appellee provided no false information. The only information listed on the form is appellee's name, address, driver's license number, and license plate number, none of which appellants allege to be false.

{¶ 73} Furthermore, even if appellee did violate some type of law in purchasing the cub, this does not give rise to ownership rights for appellants. If anything, Burton would have a cause of action against appellee, since the transaction involved Burton and appellee. Appellants, as third parties, have no standing to challenge the sale between Burton and appellee.

{¶ 74} Accordingly, appellants' third assignment of error is without merit.

{¶ 75} For the reasons stated above, the trial court's decision is hereby affirmed.

Judgment affirmed.

WAITE, P.J., and DEGENARO, J., concur.