OPINION
{¶ 1} Plaintiff-appellant, D.A.N. Joint Venture III, L.P., appeals the judgment of the Painesville Municipal Court, granting defendant-appellee, Steven Armstrong's, motion for summary judgment and subsequently denying D.A.N.'s motion for a directed verdict at trial. For the following reasons, we affirm the decision of the court below.
 {¶ 2} On February 19, 1994, Armstrong entered into an Installment Sales Contract with City Auto Repo Sales, for the purchase of a used Chevrolet Camaro. *Page 2 
At the time of contracting, Armstrong was a resident of Fort Lauderdale, Florida, and the contract was executed in Florida. As part of the sales agreement, City Auto assigned its rights under the contract to Keller Financial Services.
 {¶ 3} Armstrong defaulted on the payments and, in August 1994, the vehicle was repossessed and sold at private auction. The vehicle sold for $6,349.38, leaving a deficiency balance on the loan of $4,190.16.
 {¶ 4} In late 1994 or early 1995, Armstrong moved from Florida to Ohio, without informing Keller Financial Services of his whereabouts.
 {¶ 5} In November 1998, Keller Financial Services assigned the contract to Beal Bank, S.S.B. In February 1999, Beal Bank assigned the contract to The Cadle Company. In July 2000, The Cadle Company subsequently assigned the contract to its "general partner," D.A.N., of Newton Falls, Ohio. The Cadle Company and D.A.N. occupy the same office space and employees of D.A.N. work on accounts owned by The Cadle Company as well as those owned by D.A.N. D.A.N. employees are paid through payroll checks issued by The Cadle Company.
 {¶ 6} In March 1999, The Cadle Company attempted to contact Armstong by mail in Ohio regarding the debt.
 {¶ 7} In 2003, Clare Mines and Gregory Cadle, account officers for D.A.N., contacted Armstrong by telephone in an attempt to collect the money owed. After some negotiations to settle the account, Armstrong informed the account officers of his belief that any legal action on the account was time barred.
 {¶ 8} In September 2004, Tonya Guiliano, another D.A.N. account officer, contacted Armstrong regarding the money owed. Thereafter, D.A.N. filed a suit *Page 3 
against Armstrong in Broward County, Florida. This action was voluntarily dismissed in February 2005, after Armstrong had raised the defense of the Florida statute of limitations. Armstrong responded by filing suit against The Cadle Company in Florida District Court, alleging improper collection practices. In the course of this litigation, The Cadle Company admitted its status as a "debt collector" under the Fair Debt Collection Practices Act.
 {¶ 9} In January 2005, Guiliano contacted Armstrong's former employer, the Steris Corporation, requesting employment information.
 {¶ 10} On March 2, 2005, Terry J. Walrath, counsel for The Cadle Company, sent a "30-day" letter to Armstrong demanding payment or disavowal of the debt.
 {¶ 11} On March 21, 2005, D.A.N. filed suit against Armstrong in Painesville Municipal Court, believing that Ohio's fifteen-year statute of limitations for contract actions applied. D.A.N. sought damages in the amount of $7,363.29, representing a principal amount of $3,356.83, plus accrued interest and late fees in the amount of $4,006.46. Armstrong answered and counter-claimed alleging violations of the Uniform Commercial Code, the Florida Consumer Finance Act, the Florida Lending Practices Act, the Florida Motor Vehicle Retail Sales Finance Act, the Fair Debt Collection Practices Act, and the Ohio Consumer Sales Practice Act. The basis for Armstrong's answer and counter-claims was that D.A.N.'s complaint is barred by the statute of limitations.
 {¶ 12} Both parties moved for summary judgment.
 {¶ 13} On March 2, 2006, a magistrate for the municipal court issued a decision on the parties' motions. The magistrate decided that, since "all pertinent *Page 4 
events surrounding this retail installment sales contract occurred in Florida," the Florida five-year statute of limitations for contract actions applied, barring D.A.N.'s claim. Fla. Stat. 95.11. The magistrate also found that Armstrong's absence from the State of Florida did not toll the statute of limitations. Accordingly, Armstrong's motion for summary judgment was granted.
 {¶ 14} The magistrate also granted summary judgment in D.A.N.'s favor as to Armstrong's claims based on Florida law on the grounds that Armstrong should have raised these claims in his lawsuit filed in Florida District Court. As to Armstrong's claims for violations of the Fair Debt Collection Practices Act and the Ohio Consumer Sales Practice Act, the magistrate found that triable issues of material fact remained and denied D.A.N.'s motion as to these claims. The municipal court adopted the magistrate's decision the same day it was issued.
 {¶ 15} On March 8, 2006, a trial was held before the magistrate on Armstrong's counterclaims under the Fair Debt Collection Practices Act and the Ohio Consumer Sales Practice Act. Counsel for D.A.N. moved for a directed verdict on the issue of whether D.A.N. is a "debt collector" for the purposes of the Fair Debt Collection Practices Act and the Ohio Consumer Sales Practices Act.
 {¶ 16} On March 21, 2006, the magistrate issued his decision along with findings of fact and conclusions of law. The magistrate found in favor of Armstrong and awarded damages in the amount of $2,600 plus interest.[1] The magistrate denied D.A.N.'s motion for a directed verdict, construing it as a motion to dismiss pursuant to *Page 5 
Ohio Civil Rule 41(B)(2). The municipal court adopted the magistrate's decision on March 23, 2006.
 {¶ 17} On April 17, 2006, D.A.N. filed objections to the March 21, 2006 magistrate's decision with findings of fact and conclusions of law. The municipal court overruled D.A.N.'s objections on the same day. This appeal timely follows.
 {¶ 18} On appeal, D.A.N. raises the following assignments of error:
 {¶ 19} "[1.] The trial court erred to the prejudice of Plaintiff-Appellant in applying Florida's statute of limitations to plaintiff's claims and granting Defendant-Appellee's motion for summary judgment on that basis.
 {¶ 20} "[2.] The trial court erred in denying Plaintiff-Appellant's Motion for Directed Verdict and In Awarding Damages to Appellee."
 {¶ 21} The first question we must address under the first assignment of error is whether D.A.N. has properly preserved the issue of the statute of limitations for appellate review. In a matter referred to a magistrate, "[a] party may file written objections to a magistrate's decision within fourteen days of the filing of the decision." Ohio Civ.R. 53(D)(3)(b)(i). "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * *, unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Ohio Civ.R. 53(D)(3)(b)(iv).
 {¶ 22} However, "[a] magistrate's decision shall indicate conspicuously that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * *, unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b)." Ohio Civ.R. *Page 6 
53(D)(3)(a)(iii). Where the magistrate's decision fails to include the language required by Civ.R. 53(D)(3)(a)(iii), a party is not prevented from assigning as error on appeal the lower court's adoption of factual findings or legal conclusions. Mix v. Mix, 11th Dist. No. 2003-P-0124,2005-Ohio-4207, at ¶ 22.
 {¶ 23} In the present case, D.A.N. did not file timely objections to the magistrate's decisions of March 2, 2006 or of March 21, 2006. However, neither of the magistrate's decisions "conspicuously indicated" that the parties had fourteen days to file objections or waive their right to appeal as required by Civ.R. 53(D)(3)(a)(iii). Accordingly, we will consider D.A.N.'s assignment of error regarding the applicable statute of limitations.
 {¶ 24} The second preliminary question before us concerns the proper standard of review. D.A.N. urges that our standard of review is de novo, as is appropriate in cases involving summary judgment. Grafton v. OhioEdison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Armstrong argues that our standard of review is abuse of discretion, as is generally applied when reviewing a court's adoption of a magistrate's decision. Wade v.Wade (Lake Cty.1996), 113 Ohio App.3d 414, 419; Stafinsky v.Stafinsky (Portage Cty.1996), 116 Ohio App.3d 781, 785.
 {¶ 25} Although this court is technically reviewing the trial court's adoption of the magistrate's summary determination that the Florida statute of limitations applies, we will review that decision under a de novo standard of review. The abuse of discretion standard of review is not mandated by Rule 53. Armstrong has not cited any case where a court of appeals has reviewed the lower court's adoption of a magistrate's decision granting summary judgment under an abuse of discretion *Page 7 
standard. There are cases that have expressly reviewed such decisions under the de novo standard of review. See Long v. Noah's Lost Ark,Inc., 158 Ohio App.3d 206, 2004-Ohio-4155, at ¶ 17, and the cases cited therein. We also agree with the reasoning in Long, that the appellate court's de novo review of summary judgment rulings should not be able to be circumvented by referral to a magistrate. Id. at ¶ 18. Such a practice would allow for the termination of potentially meritorious claims under the extremely deferential abuse of discretion standard. Cf.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219 ("[t]he term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable") (citations omitted). "This would be inherently unfair to the party against whom summary judgment is granted." Long,2004-Ohio-4155, at ¶ 18.
 {¶ 26} The magistrate's conclusion that the Florida statute of limitations applied in the present case was based on the fact that "all pertinent events surrounding this retail installment sales contract occurred in Florida" and the case of Payne v. Kirchwehm (1943),141 Ohio St. 384.
 {¶ 27} In Payne, the Ohio Supreme Court held: "Though * * * fifteen years is the limitation of time fixed for an action upon a contract in writing in Ohio, the five-year limitation prescribed by the law of Florida for an action upon a contract in writing is by reason of Section 11234, General Code, applicable to an action brought in Ohio upon a written contract executed and to be performed in Florida." Id. at paragraph one of the syllabus; also, Alropa Corp. v. Kirchwehm (1941),138 Ohio St. 30, at paragraph four of the syllabus. G.C. 11234, the basis for the decision in Payne and Alropa *Page 8 Corp., provided as follows: "If the laws of any state or country where the cause of action arose limits the time for the commencement of the action to a less number of years than do the statutes of this state in like causes of action then said cause of action shall be barred in this state at the expiration of said lesser number of years."
 {¶ 28} As D.A.N. correctly points out, G.C. 11234, subsequently R.C.2305.20, was repealed on November 5, 1965. In the absence of this statute, "Ohio has consistently applied the practically universal rule that limitations of actions are fixed by the laws of the state in which suit is filed rather than that in which a cause of action arises."Assoc. Financial Servs. v. Brogan (Oct. 22, 1990), 5th Dist. No. 15-CA-90, 1990 Ohio App. LEXIS 4607, at *6-*7. See Alropa Corp.,138 Ohio St. 30, at paragraph one of the syllabus ("The validity and interpretation of a contract are governed by the laws of the state where such contract is made or is to be performed; but the remedies are governed by the laws of the state where the suit is brought. The limitation of actions relates to the remedy."); Cole v. Mileti (C.A.6 1998), 133 F.3d 433, 437 (noting that the Ohio Supreme Court has adopted Restatement (Second) of Conflict of Laws § 142(2) which "requires Ohio courts to apply Ohio's statute of limitations to breach of contract actions brought in Ohio, even if the action would be time-barred in another state") (citations omitted).
 {¶ 29} Armstrong counters that G.C. 11234/R.C. 2305.20 was re-enacted in Ohio as part of R.C. 2305.03, effective April 7, 2005. R.C.2305.03(B) ("[n]o civil action that is based upon a cause of action that accrued in any other state * * * may be commenced and maintained in this state if the period of limitation that applies to that action under the laws of that other state * * * has expired or the period of limitation that *Page 9 
applies to that action under the laws of this state has expired"). However, the inclusion of this language in R.C. 2305.03 did not take effect until after D.A.N. filed its suit against Armstrong (seventeen days after suit was filed to be precise). Amended R.C. 2305.03(B) cannot be applied retroactively inasmuch as it would deprive D.A.N. of the right to sue for the recovery of debt. Gregory v. Flowers (1972),32 Ohio St.2d 48, at paragraph three of the syllabus ("When the retroactive application of a statute of limitation operates to destroy an accrued substantive right, such application conflicts with Section 28, ArticleII of the Ohio Constitution [`[t]he General Assembly shall have no power to pass retroactive laws']").
 {¶ 30} Accordingly, D.A.N.'s claim against Armstrong is governed by the Ohio statute of limitations.
 {¶ 31} The question next arises as to which Ohio statute of limitations should apply. D.A.N. would apply the fifteen-year statute of limitations generally applicable to contracts in writing. R.C. 2305.06.
 {¶ 32} Armstrong argues the proper statute of limitations is the six-year statute of limitations applicable to actions arising under the Ohio Retail Sales Installment Act. Although the Retail Installment Sales Act does not contain a statute of limitations provision, several courts have applied to such actions the six-year statute of limitations applicable to "liability created by statute other than a forfeiture or penalty." R.C. 2305.07. See North Shore Auto Financing, Inc. v. Car NowAcceptance Co., 8th Dist. No. 82226, 2003-Ohio-3964, at ¶ 11;Jenkins v. Hyndai Motor Financing Co. (S.D.Ohio 2005),389 F.Supp.2d 961, 969 (citations omitted). *Page 10 
 {¶ 33} Armstrong's argument is inapplicable. D.A.N.'s cause of action against Armstrong arises from a retail sales contract. It is not based in any way on an alleged violation of the Ohio Retail Sales Installment Act. Cf. C.B. Transp. Servs., Inc. v. Bus and Bodies, Inc. (Aug. 15, 1994), 12th Dist No. CA94-02-030, 1994 Ohio App. LEXIS 3549, at *3-*6 (applying a four-year statute of limitations to a retail installment sales contract that conformed to the requirements of the Act).
 {¶ 34} The proper statute of limitations applicable to D.A.N.'s claim is the four-year statute of limitations "for [the] breach of any contract for sale" contained in Ohio's Uniform Commercial Code. R.C.1302.98(A). The provisions of R.C. Chapter 1302 apply to contract for the sale of "goods," as defined in R.C. 1302.01(A)(8), and encompass the sale of a used automobile. See Hughes v. Al Green, Inc. (1981),65 Ohio St.2d 110, 111-112 (where a cause of "action is grounded upon * * * an alleged breach of a contract for the sale of a motor vehicle, `goods' as defined in R.C. 1302.01(A)(8), resolution of th[e] dispute must be guided by the provisions of R.C. Chapter 1302") (footnote omitted);Watson v. Falhaber Datsun, Inc. (June 26, 1987), 4th Dist. No. 447, 1987 Ohio App. LEXIS 7684, at *7 ("the provisions of the sale of goods article of the Uniform Commercial Code, adopted in Ohio as R.C. Chapter 1302, are applicable to the sale of a used motor vehicle"); Levin v.Nielsen (1973), 37 Ohio App.2d 29, 33 ("the provisions of the sales of goods chapter of the Uniform Commercial Code (R.C. ch. 1302) are applicable to the sale of a motor vehicle").[2] *Page 11 
 {¶ 35} Accordingly, the municipal court correctly concluded that D.A.N.'s cause of action against Armstrong, arising out of an installment sales contract are barred by the statute of limitations, although a different statute of limitations than the one relied on by the lower court applies. The first assignment of error is without merit.
 {¶ 36} Under the second assignment of error, D.A.N. argues that the magistrate and municipal court erred by overruling its motion for a directed verdict, properly construed by the lower court as a motion to dismiss under Civil Rule 41(B)(2). Osborne, Inc. v. H R Purchasing,Inc., 11th Dist. No. 2003-L-051, 2004-Ohio-3503, at ¶ 9 n. 1 ("in a trial to the court, such a motion is a motion to dismiss under Civ.R. 41(B)(2), not a motion for a directed verdict under Civ.R. 50") (citations omitted). Civ.R. 41(B)(2) provides that, "in an action tried by the court without a jury, * * * the defendant * * * may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." A court of appeals "may set aside the trial court's decision only if it is erroneous as a matter of law or against the manifest weight of the evidence." Osborne, 2004-Ohio-3503, at ¶ 9.
 {¶ 37} D.A.N. argues that the trial court erred in its determination that it is a "debt collector" subject to the Fair Debt Collection Practices Act. We disagree.
 {¶ 38} "The Fair Debt Collection Practices Act prohibits `debt collectors]' from making false or misleading representations and from engaging in various abusive and unfair practices." Heintz v.Jenkins (1995), 514 U.S. 291, 292. The lower court found D.A.N. to have violated this Act by "falsely representing that a debt was owed when it was already time barred," 15 U.S.C. 1692e(2); "threatening legal action when *Page 12 
it could not legally be advanced," 15 U.S.C. 1692e(5); and by its "failure under the notice of 3/2/5 * * * to provide a full 30 days to dispute the debt before filing suit," 15 U.S.C. 1692g.
 {¶ 39} The provisions of the Act distinguish between "debt collectors" and "creditors." Pollice v. National Tax Funding, L.P. (C.A.3 2000),225 F.3d 379, 403 (citations omitted). A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce of the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."15 U.S.C. 1692a(6). A "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. 1692a(4).
 {¶ 40} Thus, "[t]he statute does not apply to persons or businesses collecting debts on their own behalf. * * * It is directed to those persons who are engaged in business for the principal purpose of collecting debts." Staub v. Harris (C.A.3 1980), 626 F.2d 275, 277;Perry v. Stewart Title Co. (C.A.5 1985), 756 F.2d 1197, 1208 ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.") (citation omitted). *Page 13 
 {¶ 41} In the present case, there was abundant evidence before the lower court from which to conclude that D.A.N. is a debt collector for the purposes of the Act.
 {¶ 42} Initially, there is the fact that The Cadle Company stipulated that it was a "debt collector" for the purposes of the Fair Debt Collection Practices Act in the course of Armstrong's federal litigation in Florida. D.A.N. argues that this stipulation is not binding on itself, although The Cadle Company is D.A.N.'s general partner in a limited partnership, since "the status of a general partner is not imputed to a limited partner." D.A.N. also notes that it expressly denied being a "debt collector" for purposes of the Fair Debt Collection Practices Act in the present litigation.
 {¶ 43} Although The Cadle Company's stipulation is not binding on D.A.N., it is competent, credible evidence that the magistrate could properly consider in rendering his decision. The magistrate found that the business operations of The Cadle Company and D.A.N. were so intertwined that the actions of one could be imputable to the other. For example, D.A.N. and the Cadle Company share the same office space and mailing address. Employees of D.A.N. receive their payroll checks from The Cadle Company. Account officers for D.A.N. routinely worked on Cadle Company accounts. When D.A.N. account officer Guiliano decided to file suit against Armstrong in Florida, The Cadle Company's in-house counsel, Attorney Walrath, filed the suit. It was also Attorney Walrath who dismissed the Florida suit and re-filed the action in Ohio.
 {¶ 44} Two of D.A.N.'s account officers further testified that they were trained to comply with the provisions of the Fair Debt Collections Practice Act and used *Page 14 
specific forms for collection, including the letters sent to Armstrong. Account officer Mines testified to receiving "daily training" on the Fair Debt Collections Practice Act and "regular team meeting discussions" about its requirements.
 {¶ 45} Finally, it is undisputed that D.A.N. had notice that the Armstrong account was in default when it was assigned from The Cadle Company. See Pollice, 225 F.3d at 403 ("an assignee may be deemed a `debt collector' if the obligation is already in default when it is assigned") (citation omitted); Schlosser v. Fairbanks Capital Corp.
(C.A.7 2003), 323 F.3d 534, 536 ("the [Fair Debt Collections Practice] Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not").
 {¶ 46} For the foregoing reasons, the lower court did not err in its imputation of The Cadle Company's status as a "debt collector" to D.A.N.
 {¶ 47} We also reject D.A.N.'s argument that it was necessary to prove that it acted intentionally. D.A.N. relies on 15 U.S.C. 1692k(c), which provides: "A debt collector may not be held liable in any action brought under this [subchapter] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Despite this language, federal courts are consistent in their interpretation of the Fair Debt Collection Practices Act as a "strict liability statute." Clark v. Capital Credit Collection Servs. Inc. (C.A.9 2006), 460 F.3d 1162, 1175 (citations omitted). The provision relied upon by D.A.N. constitutes a "narrow exception to strict liability" and is an affirmative defense that places the burden upon D.A.N. to prove a "bona fide error." Id. at 1177; *Page 15 Hartman v. Asset Acceptance Corp. (S.D.Ohio 2004), Case No. 1:03-cv-113, 2004 U.S. Dist. LEXIS 24845, at *4 ("the [Fair Debt Collection Practices Act] imposes strict liability * * * and * * * the only express statutory defense is `bona fide error'". Given the testimony of D.A.N.'s employee that suit was filed against Armstrong in Ohio in order to avoid Florida's statute of limitations, this burden was not met.
 {¶ 48} D.A.N. further argues that Armstrong failed to establish a "separate basis" for liability under the Ohio Consumer Sales Practices Act at trial. Again, we disagree.
 {¶ 49} The Ohio Consumer Sales Practices Act prohibits "suppliers" from "committing] unfair or deceptive practice[s]" or "unconscionable act[s] or practice[s] in connection with a consumer transaction." R.C.1345.02 and 1345.03. A supplier is defined as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." R.C. 1345.01(C). "A person retained to collect, or attempt to collect upon claims of debt arising from a consumer transaction is a `supplier' as defined by R.C. 1345.01(C)."Gatto v. Frank Nero Auto Lease, Inc. (April 8, 1999), 8th Dist. No. 74894, 1999 Ohio App. LEXIS 1571, at *8; Celebrezze v. United Research,Inc. (1984), 19 Ohio App.3d 49, at paragraphs two and three of the syllabus.
 {¶ 50} "Numerous cases have held that various violations of the [Fair Debt Collection Practices Act] constitute a violation of the [Consumer Sales Practices Act]. * * * Since the underlying purpose of the [Fair Debt Collection Practices Act] is to prohibit `abusive, deceptive and unfair debt collections practices,' the purpose of both *Page 16 
acts is to prohibit both unfair and deceptive acts and * * * any violation of any one of the enumerated sections of the [Fair Debt Collection Practices Act] is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03." Becker v.Montgomery, Lynch (N.D.Ohio 2003), Case No. 1:02CV 874, 2003 U.S. Dist. LEXIS 24992, at *6-*7; Hartman, 2004 U.S. Dist. LEXIS 24845, at *28.
 {¶ 51} In the present case, the magistrate specifically identified the basis of D.A.N.'s liability under the Consumer Sales Practices Act as its violation of the Fair Debt Collection Practices Act, i.e. "falsely representing that a debt was owed when it was already time barred" and "threatening legal action when it could not legally be advanced." The magistrate also identified eight specific instances of D.A.N. committing these violations in connection with its award of damages under the Consumer Sales Practices Act.
 {¶ 52} For the foregoing reasons, it was not necessary to establish a "separate basis" for violation of the Consumer Sales Practices Act.
 {¶ 53} The second assignment of error is without merit.
 {¶ 54} Accordingly, the judgment of the Painesville Municipal Court, granting summary judgment against D.A.N. and finding for Armstrong on his claims for violations of the Fair Debt Collection Practices Act and Consumer Sales Practices Act, is affirmed.
CYNTHIA WESTCOTT RICE, P.J. and COLLEEN MARY OTOOLE, J., concur.
[1] This sum represents an award of $1,000 for violation of the Fair Debt Collection Practices Act and $1,600 for violations of the Ohio Consumer Sales Practice Act.
[2] Although D.A.N. did not raise the issue of tolling under R.C.2305.15, we note the Ohio Supreme Court has held that this section, "which provides for the tolling of statutes of limitation in described contingencies contemplates causes of action which arise in Ohio and does not embrace causes of action which originate in foreign jurisdictions."Wentz v. Wentz (1956), 165 Ohio St. 558, at a paragraph two of the syllabus. *Page 1