OPINION
{¶ 1} Defendants-appellants Thomas and William Winland appeal from the Belmont County Common Pleas Court's grant of summary judgment in favor of plaintiff-appellee Charles Winland. The issue in this appeal is whether the trial court erred in granting summary judgment in favor of appellee. For the reasons stated below, the judgment of the trial court is affirmed.
 STATEMENT OF THE FACTS AND CASE {¶ 2} The Winland brothers, Charles, Thomas, William, and Lewis (deceased), inherited land from their father. Prior to their father's death the land was used for a dairy farm. After his death, the property continued to be used for a dairy farming operation.
 {¶ 3} Appellants Thomas and William maintain that the farm constituted a jointly operated farming partnership that each of the brothers owned an equal interest. Appellee Charles disputes this assertion and contends that he was in charge of running the farming operation. He claims that the brothers did not share in the profits, rather he paid them for their labor. Thus, he claims that it was not a partnership and his brothers were just laborers.
 {¶ 4} The farming business appears to be an operation that the brothers did on the side; each worked other places while still contributing to the farm. In 1991, appellant Thomas decided to quit working in this family farming operation because he felt that he was not being adequately compensated for his work. He was given roughly $200 a week to pay himself and labor. (Thomas Depo. 30). He was either paid $200 in cash or in calves. (Thomas Depo. 30-31). At the time he quit, Thomas removed various items of personal property from the farm. Appellant William quit working on the farm sometime (it is not specified exactly when he quit) after Thomas. It is unclear if he removed any personal property at the time he quit.
 {¶ 5} In 1995, appellee Charles filed a complaint seeking the partition of real estate against appellants Thomas and William.[1]
Thomas and William answered and counterclaimed. Charles then filed a motion for summary judgment on the partition claim. The motion was granted in his favor. Upon appraisal and order of sale, he purchased by election the real estate. Issues as to the partition are not raised in this appeal, rather this appeal deals solely with the counterclaim.
 {¶ 6} The counterclaim, filed by appellants Thomas and William, sounded in conversion of personal property. Thomas claims that Charles converted the following property: 1) an extension ladder; 2) 8 inch cylinder; 3) white metal sheets; 4) 24 2x4x9 tubing; 5) feed grinder; 6) livestock trailer; 7) tire chains; 8) water pump; 9) log chains; 10) silo blocks; 11) his share of 10 head of cattle; 12) cedar chest; and 13) gun cabinet. (04/18/95 Counterclaim; Thomas Depo. 17-21). William claims that Charles converted the following property: 1) Farmall 460 Tractor; 2) trailer for Farmall 460 Tractor; 3) lumber that he had purchased to be used on the farm; 4) labor for picking corn in 1993; 5) labor on fixing the Massey Ferguson tractor; and 6) his share of 10 head of cattle. (04/18/95 Counterclaim; William Depo. 5-6).
 {¶ 7} In June 2002, appellee filed a motion to dismiss the counterclaim for lack of prosecution by appellants Thomas and William. The trial court overruled this motion. Appellants then began to conduct discovery, i.e., depositions and interrogatories. After the conclusion of this discovery, appellee Charles filed a motion for summary judgment on the counterclaim asserting that there were no genuine issues of material fact for trial and that when construing the evidence most strongly in favor of appellants, reasonable minds could come to but one conclusion, that Charles was entitled to judgment as a matter of law. The trial court granted summary judgment for Charles. Thomas and William appeal from that order raising one assignment of error.
 Assignment of Error {¶ 8} "The trial court erred when granting the plaintiff's motion for summary judgment."
 {¶ 9} This appeal involves a challenge to summary judgment. An appellate court reviews summary judgment under a de novo standard, using the same standards as the trial court. Civ.R. 56(C); Grafton v. OhioEdison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Pursuant to Civ.R. 56(C), summary judgment shall be rendered if the relevant documents show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Where reasonable minds can only come to a conclusion that is adverse to the nonmovant, summary judgment is proper.
 {¶ 10} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim."Dresher v. Burt (1996), 75 Ohio St.3d 280, 296. If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden to produce evidence on any issue for which that party bears the burden of proof at trial. Id. at 293. In order to survive summary judgment, Thomas and William had to show that when viewing the evidence in the light most favorable to them, there was a genuine issue of material fact as to whether Charles converted their property.
 {¶ 11} "'Conversion is a wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights. Bench BillboardCo. v. Columbus (1989), 63 Ohio App.3d 421; Ohio Tel. Equip. Sales,Inc. v. Hadler Realty Co. (1985), 24 Ohio App.3d 91. In order to prove the conversion of property, the owner must demonstrate (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner. Id. The measure of damages in a conversion action is the value of the converted property at the time it was converted. Brumm v. McDonald Co.Securities, Inc. (1992), 78 Ohio App.3d 96.' See, also, Kraft Constr.Co. v. Cuyahoga Cty. Bd. of Commrs. (1998), 128 Ohio App.3d 33, 41."R.G. Engineering Mfg. v. Rance, 7th Dist. No. 01CO12, 2002-Ohio-5218, at ¶ 89. See, also, Allied Erecting Dismantling Co., Inc. v.Youngstown, 151 Ohio App.3d 16, 2002-Ohio-5179, at ¶ 76.
 {¶ 12} Implicit in the above two elements is that the party claiming conversion is the owner of the allegedly converted property. AlliedErecting, 151 Ohio App.3d 16, 2002-Ohio-5179, at ¶ 76. Accordingly, the first thing that Thomas and William had to show was that they were the owners (at least partial owners) of the property claiming to be converted.
 {¶ 13} They claim their ownership rights in the allegedly converted property arises from the alleged partnership they had with Charles in running the dairy farm. (Thomas Depo. 28, 30, 46; William Depo. 6, 12). The claim of the partnership and claim to the above listed property appears to solely rely on the jointly owned real estate. Both Thomas and William admitted that there was no written partnership agreement, however, they claimed that a partnership did exist. (Thomas Depo. 30).
 {¶ 14} Charles, on the other hand, claims that there was no partnership between the brothers. Rather, it was his business and he paid his brothers for any labor they did for him. Thus, according to him, as there was no partnership, there is no claim of ownership. He further claims that neither brother demanded return of the property or could establish ownership of the property.
 {¶ 15} The trial court, after considering the depositions and affidavit, concluded that there was no genuine issue as to material fact and that reasonable minds could come to but one conclusion and that conclusion was that conversion did not occur. This finding was based partly on the conclusion that no partnership existed. Thus, in determining whether a genuine issue of material fact exists as to the alleged conversion of partnership property, we must first determine whether there is a genuine issue of material fact as to whether a partnership existed between the brothers.
 {¶ 16} In Ohio, a partnership is defined statutorily. It is defined as an association of two or more persons to carry on as co-owners a business for profit. R.C. 1775.05(A). Furthermore, the partnership statutes provide rules to determine the existence of a partnership. R.C. 1775.06(B) states that, "[j]oint tenancy, tenancy with a right of survivorship, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of property."
 {¶ 17} Clearly, the property inherited and owned by the brothers falls into one of the listed categories in R.C. 1775.06(B). Thus, in accordance with that statutory mandate, Thomas and William's insinuation that the joint ownership of this property created a partnership between the brothers to run the dairy farm is inaccurate. According to the statute, the joint ownership alone does not establish a partnership. R.C.1775.06(B). See, also, In re Needleman (S.D.Ohio 1997), 204 B.R. 524.
 {¶ 18} Yet, the partnership statutes do provide that a share of profits of a business is prima facie evidence that the party receiving the share of profits is a partner in the business. R.C. 1775.06(D). However, the testimony and affidavit do not establish that there was a sharing of profits.
 {¶ 19} Thomas testified that Charles gave him $200 a week for labor. (Thomas Depo. 30). He further explained that this amount was either paid for in cash or in calves. (Thomas Depo. 30). Later, it was stated that if a brother (meaning Thomas, William or Lewis) did not do any work for the farm for the week, then he would not get any form of compensation. (Thomas Depo. 45). Thomas also testified that there was an agreement between him and Charles, that he could do work for Charles in exchange for Charles making payments on a loan Thomas had through PCS in Barnesville. (Thomas Depo. 31-33).
 {¶ 20} The way that both Thomas and Charles describe the above arrangements are that Thomas was being paid for the labor he did on the farm. R.C. 1775.06(D)(2) states that the inference of partnership does not apply when profits are received as wages of an employee. Thus, given the above evidence there is no prima facie evidence of a partnership.
 {¶ 21} Furthermore, all these facts show that there was not a partnership between the brothers. The description by the brothers on how this dairy farm was run indicates that Charles ran the farm and Thomas and William worked as employees. Thomas and William had to do work on the farm in order to be compensated. That compensation might be paid in cash, calves or as payment on one of their loans. But the undisputed fact remains that work had to be performed in order for them to be compensated. Furthermore, the clear evidence establishes that there was no partnership tax returns filed. (Thomas Depo. 35). Charles claimed the business, while the other brothers only listed the amount they were compensated on their own tax return as "other income."
 {¶ 22} Even when viewed in the light most favorable to Thomas and William, reasonable minds could not conclude that a partnership existed; there is no genuine issue of material fact. Since Thomas and William's claim of conversion is premised on joint ownership of property based upon the partnership, if no partnership existed then Thomas and William's claim of conversion fails.
 {¶ 23} Furthermore, it also could be determined that Thomas and William's motion in opposition to summary judgment was procedurally defective. Charles' summary judgment motion is supported by referencing both depositions and an affidavit. Conversely, Thomas and William's motion in opposition to summary judgment contains no supporting affidavit and fails to cite to depositions in support of their position. As explained above, in accordance with Civ.R. 56(E) when a motion for summary judgment is made and supported according to the rule, the adverse party cannot rest upon the mere allegation or denial of the party's pleading. Their own statements at the depositions that a partnership existed could support their motion, however, there are no facts to support that allegation. Thus, this provides another basis for affirming the trial court's grant of summary judgment for Charles. Regardless of all the above analysis, even if a partnership did exist, Thomas and William failed to show that a genuine issue of material fact exists as to the elements of conversion.
 {¶ 24} As explained above, conversion requires the owner to demand the return of the property from the possessor after the possessor exerted dominion or control over the property (first element of conversion). Charles' affidavit attached to his motion for summary judgment clearly stated that there has never been a demand made to him to return the property. However, Thomas and William claim that they demanded the property. The deposition testimony shows that some of these things asked for were not demanded until the 1995 counterclaim or later, i.e., demand for gun cabinet was not made until 2002 after the brothers' mother died. (Thomas Depo. 46).
 {¶ 25} Implicit in making the demand for return of the property is that the demand must be made within a reasonable amount of time. See Suruv. City of Cleveland (Feb. 25, 1999), 8th Dist. No. 73639 (stating that conversion did not occur because the vehicle was not wrongfully impounded and the city waited a reasonable length of time to dispose of the vehicle). The testimony undisputedly establishes that Thomas left the property in 1991, but did not claim conversion of the property until 1995 when he filed the counterclaim. A four year lapse of claiming ownership of the personal property left on the farm could indicate abandonment.
 {¶ 26} "Abandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent. Mere non-use is not sufficient to establish the fact of abandonment, absent other evidence tending to prove the intent to abandon. Kiser v. Board ofCommrs. (1911), 85 Ohio St. 129; see 1 Corpus Juris Secundum (1936) 10, Abandonment, Section 3b(2)." Long v. Noah's Lost Ark, Inc.,158 Ohio App.3d 206, 2004-Ohio-4155, at ¶ 35, quoting Davis v. Suggs
(1983), 10 Ohio App.3d 50, 52.
 {¶ 27} In 1991, Thomas took property, valued over $3,000, from the dairy farm that he claimed was his personal property. Thomas testified that a number of the items he is claiming to be converted were on the property at that time, however, he chose not to take them. (Thomas Depo. 22, 23). This action of leaving the property claiming to be converted on the dairy farm after he had the opportunity to take it could evidence an intent to abandon, especially when considering he did not make a timely demand for the property.
 {¶ 28} Moreover, there is no evidence that Charles exerted control over this allegedly converted property. In fact, the evidence suggests that he did not exert any control over this property.
 {¶ 29} At the deposition the following conversation occurred:
 {¶ 30} "Q. Between 1991 and April 18th of 1995 when you filed your counterclaim, did you ever go to your brother Charles and demand the extension ladder, the eight-inch cylinder, all these other items?
 {¶ 31} "A. He was aware and said I could have this stuff." (Thomas Depo. 46-47).
 {¶ 32} Thomas' answer to this question shows that he could have taken the property if he wanted to. Furthermore, Charles' affidavit stated that the property is in the same place where his brothers left it. Considering this along with the fact that he had already taken numerous items from the dairy farm, leads reasonable minds to only one conclusion — that Charles was not exerting control over the property. As there was no clear demand for the property, it could not be determined that Charles refused to return the property (the last element of conversion).
 {¶ 33} Thus, when considering all of the above, if the claim to property is solely based upon the partnership between the brothers, Thomas and William did not provide sufficient evidence to create a genuine issue of material fact as to the alleged conversion. That said, conversion could still occur if the property claiming to be converted was either Thomas or William's own personal property and not part of the alleged partnership. It appears that Thomas and William's alternative argument is that property claiming to be converted was their own personal property.
 {¶ 34} Under this argument that the property claiming to be converted is their separate property, ownership (implicit element of conversion) is unclear. Thomas and William produced no evidence that the items (except the cattle) claiming to be theirs are actually owned by them. However, Charles offers no evidence to show that he is the owner of the items. In fact, Charles does not even claim that the property is his. Thus, there is an issue as to ownership as to the personal property other than the cattle.
 {¶ 35} Addressing all personal property allegedly converted other than the cattle, Thomas and William's claim still fails despite the factual issue of ownership. As explained above, there is no indication that a demand (first element of conversion) for their return was ever made, or at least a timely demand. Furthermore, given their actions, it appears as if they abandoned the property. Moreover, even when viewed in their favor, there was no indication that Charles exerted control over the property (last element of conversion).
 {¶ 36} As to the cattle, William claims ownership, but his ownership claim is only through his belief that the brothers had a partnership. He readily admits he did not personally own any of the cattle. Therefore, without a partnership, his claim to the cattle fails.
 {¶ 37} However, Thomas claims to have been paid in cattle and to have contributed ten cows in 1978. Charles does not dispute this fact. Thus, when viewed in the light most favorable to Thomas it can be concluded that at one time he owned some of the cows. However, Thomas did admit that he had no knowledge as to whether those cows were still alive in 1993 when Charles sold the herd. He even stated that five or six cows died annually and that would have been anywhere from 75 to 90 cows that died during that time period.
 {¶ 38} Furthermore, just like with the other personal property, he left these cows he allegedly owned at the farm. He did not pay feed bills or veterinary bills. The fact that they are living animals that need food and shelter and that he did not attempt to regain possession of the cows until two years after they were sold, shows a strong intention of abandonment. Furthermore, as explained above, the reasoning as to demand for return and exertion of control equally applies to the claimed ownership in the cows. Thus, Thomas' claim for conversion of the 10 cows fails. Consequently, even if the claim of conversion is a claim for their own personal property and not property of a partnership, their claims still fail.
 {¶ 39} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.
[1] At the time the action was filed Lewis had already predeceased the brothers. Charles had bought Lewis' interest in the property from Lewis' estate.