[Cite as *Lucas v. Ford Motor Co.*, 2018-Ohio-3765.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

SHANE LUCAS

    Appellee

    v.

FORD MOTOR COMPANY

    Appellant

C.A. No.    28622

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2015 01 0274

DECISION AND JOURNAL ENTRY

Dated: September 19, 2018

CARR, Judge.

{¶1}    Defendant-Appellant Ford Motor Company ("Ford") appeals from the judgment of the Summit County Court of Common Pleas. This Court reverses.

I.

{¶2}    In 2014, Plaintiff-Appellee Shane Lucas purchased a new 2013 Ford truck from a Ford dealership for almost $50,000. The purchase agreement included an arbitration clause. Shortly after purchasing the vehicle, Mr. Lucas began experiencing problems with it. Mr. Lucas's initial complaints included problems with the voice sync system, the rear power window, and the windshield wipers. The vehicle was repaired at a Ford dealership but Mr. Lucas continued to experience multiple different problems with the vehicle over the next several months. Mr. Lucas reported repeated problems with the sync system, problems with the air conditioning system in the seats, problems with the optional manual transmission, as well as, on

one occasion, a problem with the power suddenly shutting down on the dashboard while he was driving.

{¶3} While Mr. Lucas was experiencing intermittent issues with the vehicle, he purchased and installed several aftermarket accessories on his vehicle. These accessories were not installed at a Ford dealership. Mr. Lucas spent over $9,000 on the accessories.

{¶4} Ultimately, Mr. Lucas retained counsel and filed a claim with the Better Business Bureau against Ford. After Mr. Lucas declined a settlement proposed by Ford, the matter proceeded to arbitration through the Better Business Bureau Auto Line ("the BBB"). The agreement to arbitrate indicated that the decision of the arbitrator would be in accordance with the BBB arbitration rules and the applicable manufacturer's Program Summary. In addition, the agreement stated that "[a]ll remedies will fall within the confines of the applicable manufacturer's Program Summary unless additional remedies are noted below." The agreement listed several vehicle problems that the parties agreed to submit to arbitration and reflected that Mr. Lucas sought to have Ford repurchase the vehicle and Ford sought a denial of Mr. Lucas's claim. At the bottom of the page, there is a section which provides space for the manufacturer to extend authority to the arbitrator to provide additional relief. On one copy of the agreement, in that space, there is a handwritten notation that states "Customer also requests reimbursement for accessories installed on the vehicle and reimbursement of attorney fees and costs to assist him with his claim."

{¶5} The applicable Program Summary indicated that eligible claims "must be claims based on a defect in the vehicle's factory-supplied material or workmanship covered by the applicable Ford U.S. New Vehicle Limited Warranty." Claims that were not covered included claims that were not covered by the Ford New Vehicle Limited Warranty. The available

remedies included repairs, an extended service plan, reimbursement for repairs paid by the customer, repurchase, or replacement. With respect to repurchase, the Program Summary indicated that the arbitrator could award repurchase only if the arbitrator finds the claims meet all the elements of Ohio Lemon Law or meet certain other conditions. If repurchase was awarded, the Program Summary listed what Ford would be responsible for refunding the customer.

{¶6} The arbitrator issued a decision finding in favor of Mr. Lucas. The arbitrator found that a repurchase decision was a fair resolution of the dispute. The arbitrator found that Mr. Lucas "met the requirements of the Ohio Lemon Law for Repurchase of his vehicle without any deductions for use." The arbitrator's decision provided that the manufacturer would provide the customer with a statement of all amounts that would be paid for under the decision and if the customer disputed the amount, no later than 10 days later, the customer could submit a request to the BBB asking the arbitrator to resolve the dispute. It also provided that, at the time of repurchase, the customer must turn over the vehicle in a similar condition to the condition it was at the time of the hearing. At the end of the portion of the decision outlining the arbitrator's reasoning, the arbitrator noted Mr. Lucas's concerns with respect to the accessories and attorney fees:

> The arbitrator acknowledges the consumer's request for the manufacturer to reimburse him for the cost of certain after market items previously mentioned along with attorney fees incurred. Neither the Ford Program Summary nor the Ohio Lemon Law utilized by the BBB Auto Line cover costs to repurchase after market items unrelated to the claimed defects nor are attorney fees applicable. Consumer must address those claims for redress under separate warranty claims elsewhere.

{¶7} Mr. Lucas was also sent a letter which explained that he had 14 days to either accept or reject the decision. Mr. Lucas accepted the decision and acknowledged that he would "be legally bound, which means [he] give[s] up any right to sue the business in court on any

claim that has been resolved at the arbitration hearing, unless the business fails to perform according to the Arbitrator's decision or unless otherwise provided by state or federal law."

{¶8}   In January 2015, Mr. Lucas filed an application for an order confirming the arbitration award and a complaint for additional damages.  In the complaint, Mr. Lucas alleged that Ford had not performed under the arbitration decision and alleged one count alleging a violation of the Magnuson-Moss Warranty Act.  Therein, Mr. Lucas alleged that Ford was unable to conform his truck to the written warranty or service contract and that he was not fully compensated for his damages in arbitration.  Mr. Lucas sought recovery of costs and expenses, including attorney fees incurred in the arbitration and in pursuing the instant suit, and reimbursement for the aftermarket accessories that he had installed on the vehicle.

{¶9}   Ford filed a motion to dismiss arguing that pursuant to *Maitland v. Ford Motor Co.,* 103 Ohio St.3d 463, 2004-Ohio-5717, Mr. Lucas's acceptance of the arbitration award barred him from pursuing additional relief.  The trial court denied the motion stating that the current claim was not made pursuant to Ohio Lemon Law and therefore arbitration did not bar Mr. Lucas's claim.  Thereafter, Ford answered the complaint and asserted as an affirmative defense that the complaint failed to state a claim upon which relief can be granted.

{¶10}  Subsequently, both Ford and Mr. Lucas filed motions for summary judgment.  In his affidavit in support of his motion, Mr. Lucas acknowledged that Ford performed under the arbitration agreement.  In its motion, Ford again asserted that *Maitland* barred Mr. Lucas's claim and additionally asserted that Mr. Lucas had elected rescission as his remedy and thus could not pursue additional remedies.  The motion was denied.

{¶11}  The matter proceeded to a bench trial before a magistrate.  At the close of Mr. Lucas's case Ford moved for a directed verdict on several bases, including that Mr. Lucas's

acceptance of the arbitration award barred his claim under *Maitland* and that Mr. Lucas had elected his remedy. The motion was denied. Ford later renewed the motion, which was again denied. Ultimately, the magistrate issued a decision finding in favor of Mr. Lucas and awarded him $13,449.50, consisting of $9,149.50 for the accessories and $4,300 in attorney fees, as the prevailing party. Ford filed objections to the magistrate's decision asserting that the magistrate erred by failing to find Mr. Lucas's claim barred by his acceptance of the arbitration award under *Maitland* and by failing to find that Mr. Lucas was entitled to only one recovery. Additionally, Ford argued that Mr. Lucas failed to submit sufficient evidence to establish the reasonableness of the attorney fees.

{¶12} The trial court overruled Ford's first two objections but sustained Ford's objections concerning attorney fees and remanded the matter for further hearing. Following a hearing, the magistrate again awarded Mr. Lucas $4,300 in attorney fees, concluding they were reasonably incurred in the prosecution of Mr. Lucas's Magnuson-Moss Warranty Act claim. No objections were filed and the trial court adopted the magistrate's decision and confirmed the arbitration award.

{¶13} Ford has appealed, raising two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

PLAINTIFF'S ACCEPTANCE OF THE ARBITRATION AWARD BARS HIS CLAIMS IN THIS LITIGATION.

{¶14} Ford argues that the trial court erred in failing to conclude that Mr. Lucas's claim was barred by his acceptance of the arbitration award given the law set forth in *Maitland*. Additionally, Ford argues that Mr. Lucas's claim was barred because Mr. Lucas, by accepting the arbitration award, had elected the remedy of rescission.

{¶15} Because we conclude Ford's first argument is dispositive, we decline to address Ford's election of remedies argument. Ford points out that it argued that *Maitland* and Mr. Lucas's acceptance of the arbitration award barred his claim in its motion to dismiss, its motion for summary judgment, and in its motion for directed verdict. We note that Ford additionally raised the argument in its objections to the magistrate's decision and we limit our discussion to whether the trial court erred in overruling Ford's objections to the magistrate's decision.

{¶16} {¶10} "[W]e generally review a trial court's action on a magistrate's decision for an abuse of discretion, but do so with reference to the nature of the underlying matter." (Internal quotations and citations omitted.) *Harrison v. Lewis*, 9th Dist. Summit No. 28114, 2017-Ohio-275, ¶ 40. "If * * * the issue implicates an issue of law, this Court reviews those matters de novo." *Wintrow v. Baxter-Wintrow*, 9th Dist. Summit No. 26439, 2013-Ohio-919, ¶ 11.

{¶17} The parties appear to agree that the arbitration that took place was part of the informal dispute-resolution process discussed in R.C. 1345.77. We note that the BBB materials in the record do not require that conclusion.[1] However, in light of the parties' apparent agreement, we will proceed under the notion that the arbitration that took place was part of the dispute-resolution process provided for in the statute.

{¶18} The Ohio Lemon Law and the associated dispute-resolution process are discussed in *Maitland*. The Supreme Court noted that, Ohio Lemon Law "places a clear duty upon a manufacturer or its agents to make any necessary repairs so that a new vehicle conforms to the applicable express warranties even after the warranty has expired. R.C. 1345.72(A). If the

---

[1] The BBB materials in the record mention Ohio Lemon Law and the arbitrator's decision reflects that Mr. Lucas's claim met the requirements of Ohio Lemon Law for repurchase of his vehicle. However, the materials also indicate compliance with Ohio Lemon Law is not necessarily a requirement to recovery. Further, the materials do not indicate that the arbitration is conducted as required by the statutes.

manufacturer or seller cannot make the vehicle conform after a reasonable number of attempts, then the consumer may elect to either replace the vehicle or be refunded its full purchase price." *Maitland*, 103 Ohio St.3d 463, 2004-Ohio-5717, at ¶ 13. "The Lemon Law provides the purchaser with a statutory cause of action if the manufacturer does not comply with R.C. 1345.72. However, the consumer must first resort to an informal dispute-resolution process if one exists. R.C. 1345.77." *Id.* at ¶ 14.

{¶19} "The [arbitrator's] decision is binding on the manufacturer, but not on the consumer. The consumer may reject the decision and pursue a civil action under R.C. 1345.75. However, if the consumer accepts the board's decision, the dispute is considered settled once the manufacturer performs." (Internal citations omitted.) *Id.* at ¶ 17. Thus, once the dispute is settled, "[t]he previously existing claim is extinguished by the compromise and settlement and, as a result, any subsequent litigation based upon it is barred." *Id.* at ¶ 20.

{¶20} Here, there is no dispute that Mr. Lucas accepted the arbitrator's decision and signed the form acknowledging that, by accepting the decision, he would "be legally bound [by the decision, which means [he would] give up any right to sue the business in court on any claim that has been resolved at the arbitration hearing, unless the business fails to perform according the Arbitrator's decision or unless otherwise provided by state or federal law." In addition, at trial, Mr. Lucas acknowledged that he had received a full refund of the purchase price of the vehicle from Ford.

{¶21} Nonetheless, Mr. Lucas argues that his Magnuson-Moss Warranty Act claim is not barred because that claim was not resolved in the arbitration. He maintains there was no agreement to arbitrate the issue of his recovery of the value of aftermarket accessories and attorney fees. In support of his argument, he points out that the arbitrator even noted that he

could not recover damages for the aftermarket accessories and attorney fees because neither the Ohio Lemon Law utilized by the BBB nor the Ford Program Summary covered those costs.

{¶22} Based on the information in the record, the only claims that could be arbitrated in the BBB program at issue in this case were claims "based on a defect in the vehicle's factory-supplied material or workmanship covered by the applicable Ford U.S. New Vehicle Limited Warranty." In other words, the BBB arbitration resolved warranty disputes. Mr. Lucas failed to demonstrate at trial that his current warranty dispute was not resolved when he accepted the arbitration decision and Ford performed under the decision.

{¶23} In his complaint containing the Magnuson-Moss Warranty Act claim, Mr. Lucas alleged that Ford failed to comply with the warranties for the truck and he was not fully compensated for his damages in arbitration. He sought those damages (attorney fees and the value of aftermarket accessories) that he could not recover in arbitration. At trial, Mr. Lucas testified concerning the various repair orders for his truck. He agreed that the portion of the agreement to arbitrate which listed the particular issues that were to be arbitrated included all of his complaints with the vehicle aside from the additional damages due to the installation of the aftermarket accessories. Thus, essentially Mr. Lucas acknowledged at trial that his current Magnuson-Moss Warranty Act claim was premised upon issues that were already arbitrated, as it was the defects in the truck that would have allowed Mr. Lucas any recovery. *See* 15 U.S.C. 2310(d).

{¶24} The claim Mr. Lucas arbitrated and the claim he has raised in the instant suit are both warranty claims involving the same truck. Mr. Lucas has not demonstrated that the substance of his current warranty claim was not the same as the substance of the warranty claim resolved in the arbitration. Instead, his testimony tends to prove just the opposite. Accordingly,

we can only conclude that the arbitration decision that Mr. Lucas accepted resolved his warranty claims. *See Maitland*, 103 Ohio St.3d 463, 2004-Ohio-5717, at ¶ 20. Thus, the trial court did err in overruling Ford's objection to the magistrate's decision as Mr. Lucas's acceptance of the arbitration decision and Ford's subsequent performance pursuant to the decision did bar his current suit.

**{¶25}** We note that Mr. Lucas had the option to reject the arbitrator's decision, thereby allowing him to file any warranty claims he had and to pursue the additional remedies that are authorized outside the informal dispute-resolution mechanism. *See id.* at ¶ 17; Ohio Adm.Code 109:4-4-04(C)(7)(a). Mr. Lucas instead chose to accept the arbitrator's decision knowing that his damages would not include the value of aftermarket accessories or attorney fees.

**{¶26}** Ford's first assignment of error is sustained. The trial court is ordered to enter judgment in favor of Ford.

## ASSIGNMENT OF ERROR II

BECAUSE PLAINTIFF IS BARRED FROM BRINGING HIS SUBSEQUENT LAWSUIT, HE CANNOT BE DEEMED THE PREVAILING PARTY AND CANNOT BE AWARDED ATTORNEY'S FEES.

**{¶27}** Ford argues in its second assignment of error that the trial court erred in awarding Mr. Lucas attorney fees because Mr. Lucas was not entitled to recover under his Magnuson-Moss Warranty Act claim. Because we determined in the first assignment of error that Mr. Lucas's Magnuson-Moss Warranty Act claim was barred, we inherently also concluded that Mr. Lucas could not recover any damages or attorney fees under that claim. Thus, our resolution of Ford's first assignment of error renders this assignment of error moot. *See* App.R. 12(A)(1)(c).

III.

**{¶28}** Ford's first assignment of error is sustained and its second assignment of error is moot. The judgment of the Summit County Court of Common Pleas is reversed and the matter is remanded for the trial court to enter judgment in favor of Ford.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

SCHAFER, P. J.
CALLAHAN. J.
CONCUR.

APPEARANCES:

JEREMIAH J. WOOD, Attorney at Law, for Appellant.

PAUL D. HUDSON, Attorney at Law, for Appellant.

THOMAS E. CAFFERTY, Attorney at Law, for Appellee.